UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THERESA WALDO,

    Plaintiff,                                     Case No. 1:06-cv-768

v                                                 HON. JANET T. NEFF

CONSUMERS ENERGY COMPANY,

    Defendant.
_____/

**OPINION**

Plaintiff filed this employment discrimination action against defendant, her current employer, alleging claims of gender discrimination, sexual harassment/hostile work environment, and retaliation under state and federal law.[1] Pending before the Court is Defendant's Motion for Summary Judgment (Dkt 96). Having reviewed the motion briefs and extensive record, and having heard oral argument on the motion on June 6, 2008, the Court concludes that defendant's motion is properly DENIED.

I

At issue are plaintiff's claims of gender discrimination, hostile work environment, and retaliation emanating from her transfer into defendant's Transmission Lines Department in 2001 and her entry into defendant's four-year Line Apprenticeship Training Program in 2002. For most of this time, plaintiff was the only female utility worker in the Transmission Line Department. She alleges that she was subjected to constant and unwelcome gender/sexual harassment.

---

[1] Plaintiff also claimed intentional infliction of emotional distress, but indicated on the record that this claim will be formally withdrawn.

In her complaint, plaintiff alleged five pages of underlying factual allegations in a general "Statement of Facts, Claims and Violations." Among these, she alleged that she was subjected to discrimination related to the terms and conditions of her employment because of her gender, including defendant's practices and procedures governing job assignments, evaluation of job performance, training, and discipline (Pl's. Compl. ¶ 10). She further alleged that she reported the "unwelcome gender-based offensive and derogatory comments and conduct" to defendant's management, but defendant failed to take prompt, adequate and remedial measures to address plaintiff's complaints of harassment and discrimination. (*id.* ¶¶ 12-13).

Plaintiff also alleged that she was singled out by defendant's Joint Apprenticeship Committee (JAC) because of her gender and in retaliation for previous complaints and/or grievances of harassment and discrimination (*id.* ¶ 26). She was removed from the Apprenticeship Training Program and transferred to a department with lower pay (*id.* ¶ 32). On August 8, 2005, plaintiff was assigned to work in defendant's Sub Metro Department, where she is currently employed. Her pay was decreased by $4.00 an hour to $23.26 an hour. Further, she must begin the Apprenticeship Training Program all over again. (*id.* ¶ 27).

On the basis of her general factual allegations, plaintiff sought relief for violations of federal law in Counts 1 through 3 of her complaint: (Count 1) gender/sexual discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*, and Title I of the Civil Rights Act of 1991; (Count 2) sexual harassment/hostile work environment under Title VII and Title I; and

(Count 3) retaliation under Title VII.[2]  Because there are genuine issues of material fact with regard to each of plaintiff's federal claims, summary judgment is precluded.

II

A motion for summary judgment is properly granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  When deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party.  *Harbin-Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir. 2005).  After reviewing the whole record, the Court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

III

As a threshold matter, defendant argues that plaintiff's Title VII claims prior to March 12, 2005 are barred because they are (1) beyond the scope of her January 6, 2006 EEOC[3] charge, and (2) outside the statute of limitations (Def's. Mot. Br. 8).  Plaintiff responds that she can recover on a hostile environment theory for acts prior to March 12, 2005 as long as they were part of the same hostile work environment and at least one occurred within the 300-day limitations period (Pl's. Br. 15).

---

[2] Plaintiff alleged analogous claims under Michigan's Elliott-Larsen Civil Rights Act (ELCRA), MICH. COMP. LAWS ANN. § 37.2101 *et seq* (West 2007).  The parties do not dispute that the state law ELCRA claims may be resolved on the same grounds as the federal claims; thus, the parties' motion arguments focused on only the federal claims.

[3] Equal Employment Opportunity Commission

3

The Court disagrees that evidence of any alleged discriminatory conduct before March 12, 2005 is beyond the scope of the EEOC charge. "'It is well settled that federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge.'" *Weigel v. Baptist Hosp. of East Tennessee,* 302 F.3d 367, 379 (6th Cir. 2002) (quoting *Strouss v. Michigan Dep't. of Corr.,* 250 F.3d 336, 342 (6th Cir. 2001). However, plaintiff's EEOC charge was generally broad, and essentially referenced discrimination during the course of her participation in the apprenticeship program, which culminated in her removal from the program. The jurisdictional prerequisites of Title VII are to be liberally construed in plaintiff's favor. *Gerlach v. Michigan Bell Tel. Co.,* 501 F.Supp. 1300, 1322 (E.D. Mich. 1980). Defendant's argument fails.

Likewise, the Court rejects defendant's blanket argument that all of plaintiff's complaints of conduct and harassment in 2001 and 2002 are outside the 300-day statutory limitations period. Even if evidence of certain complaints from 2001 and 2002 is properly limited with regard to certain counts, defendant has provided no basis for those determinations, and any decision regarding the admissibility of particular evidence would be premature at this stage of the proceedings.

IV

With regard to the merits of defendant's motion for summary judgment, the Court concludes that there are material issues of fact precluding summary judgment on each of plaintiff's three federal claims.

4

A

With regard to Count 1, defendant argues that plaintiff cannot establish a prima facie case of gender discrimination for claims on or after March 12, 2005. Further, her claim fails because she cannot establish that she was qualified for the position and that a similarly situated male received more favorable treatment. However, plaintiff has come forward with specific facts and evidence to establish these elements of her claim for purposes of surviving summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986); *Mulhall v. Ashcroft*, 287 F.3d 543, 550 (6th Cir. 2002).

To establish a prima facie case of gender discrimination under Title VII, a plaintiff must prove that: "1) she is a member of a protected group; 2) she was subjected to an adverse employment decision; 3) she was qualified for the position; and 4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably than she was." *Peltier v. United States,* 388 F.3d 984, 987 (6th Cir. 2004); accord *McClain v. NorthWest Cmty. Corr. Ctr. Judicial Corr. Bd.,* 440 F.3d 320, 332 (6th Cir. 2006).

A plaintiff may establish a prima facie case of discrimination by direct[4] evidence of discrimination or by circumstantial evidence that creates an inference of discrimination. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). When a claim is based on circumstantial evidence, courts apply the three-step burden shifting approach from *McDonnell Douglas*.[5] *McClain,* 440 F.3d at 332. The plaintiff must first establish a prima facie case by a preponderance of the evidence. *Texas Dep't of Comty. Affairs v. Burdine,* 450 U.S. 248, 252-253 (1981). If a plaintiff sustains the

---

[4] "'[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006) (quoting *Kocak v. Cmty. Health Partners of Ohio, Inc.,* 400 F.3d 466, 470 (6th Cir. 2005)).

[5] *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

burden of establishing a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the defendant carries its burden, the burden shifts back to the plaintiff to show that the defendant's reasons were not its true reasons, but were a pretext for discrimination. *Id.* at 253; *McClain,* 440 F.3d at 332.

With regard to direct evidence, defendant argues that plaintiff's very minimal direct evidence, based on comments or actions by her supervisor, James McDonald, does not establish a prima facie case of discrimination because plaintiff has failed to show that McDonald had any control over plaintiff's removal from the apprenticeship program. The Court is not persuaded by this argument.

Whether McDonald's role in plaintiff's employment status was significant is subject to dispute. Plaintiff cites communications and notes between McDonald and decisionmakers or management concerning plaintiff's status and performance. Plaintiff also cites other purportedly "direct evidence" on this issue in the testimony of another female employee of defendant, Lori Sarki, regarding McDonald's discriminatory animus toward women, including plaintiff. While defendant provides evidence undermining Sarki's testimony, plaintiff again cites contrary evidence. There is also other evidence of McDonald's involvement in management activities affecting plaintiff. Moreover, plaintiff's discrimination claims center on her allegation that from the beginning of her assignment to the transmission department, McDonald was on a mission to "wash her out," which contributed to her performance problems. Given plaintiff's theory of her case, whether McDonald had control over plaintiff's removal from the apprenticeship program would not be dispositive of her claim.

In any event, even if this direct evidence fails to establish a prima facie case of discrimination, plaintiff has presented sufficient circumstantial evidence to establish a prima facie

6

case of disparate treatment. Although defendant argues that plaintiff cannot show that she was qualified for the position or that similarly situated males received more favorable treatment, there is ample evidence on these elements to preclude summary judgment.

While there is certainly evidence that raises questions about plaintiff's job performance, and whether she was qualified, the evidence is not so one-sided as to entitle defendant to judgment as a matter of law. Defendant argues that plaintiff was removed from the apprenticeship program because of repeated performance failures. But plaintiff has proffered evidence to support her argument that the performance failures resulted from continual discrimination against her as a woman. In particular, evidence established that plaintiff successfully completed Step 1 through Step 3 of the Apprenticeship Program, from 2002 to 2005, and that at least one associate journeyman instructor objected to the unannounced April 2005 testing of plaintiff in Step 4 as intended to eliminate plaintiff from the Apprenticeship Program because she was a woman. In the factual context of this case, plaintiff has presented evidence to survive summary judgment.

Defendant also argues that plaintiff has failed to show that similarly situated males were treated more favorably, because the four males referenced by plaintiff are not similarly situated in all *relevant* aspects. *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 353 (6th Cir. 1998). Defendant provides the affidavit of the JAC Administrative Specialist (Def's. Ex 36), in which the specialist explains that the performance issues of the four males differed from plaintiff's performance issues. Defendant contends that none of the males had the "abysmal history of failures that Plaintiff's record reflects" (Def's Br. 23). However, this argument disregards the nature of plaintiff's claims. Plaintiff contends that the discrimination against her caused her poor performance. Thus, the male employees cannot be legitimately distinguished merely on the basis of their performance or discipline record.

"'The burden of establishing a prima facie case of disparate treatment is not onerous.'" *Blair v. Henry Filters, Inc.,* 505 F.3d 517, 528 (6th Cir. 2007) (quoting *Burdine,* 450 U.S. at 253). "Generally, at the summary judgment stage, a plaintiff's burden is merely to present evidence from which a reasonable jury could conclude that the plaintiff suffered an adverse employment action 'under circumstances which give rise to an inference of unlawful discrimination.'" *Id.* (quoting *Burdine, supra*). Plaintiff has met this standard with regard to her gender discrimination claim.[6]

B

Defendant contends that plaintiff cannot establish a prima facie case of hostile work environment discrimination (Count 2). Title VII prohibits an employer from maintaining a hostile or abusive work environment as a result of sex discrimination. *Williams v. General Motors Corp.,* 187 F.3d 553, 560 (6th Cir. 1999). A victim of harassment must "show. . . that the alleged conduct constituted an unreasonably abusive or offensive work related environment or adversely affected the reasonable employee's ability to do his or her job." *Allen v. Michigan Dep't of Corrs.,* 165 F.3d 405, 410 (6th Cir. 1999) (quoting *Davis v. Monsanto Chem. Co.,* 858 F.2d 345, 349 (6th Cir. 1988)).

To establish a hostile environment claim of sexual harassment, the plaintiff must show that: "'1) she is a member of a protected class; 2) she was subject to unwelcomed sexual harassment; 3) the harassment was based on her sex; 4) the harassment unreasonably interfered with her work performance and created a hostile work environment; and 5) [the defendant] knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective

---

[6] Because defendant's legitimate, nondiscriminatory reason for removing plaintiff from the Apprenticeship Program is that plaintiff was unqualified, the evidence likewise suffices to rebut plaintiff's legitimate reason for the adverse employment action and show that the reason was merely pretext.

action.'" *Abeita v. TransAmerica Mailings,* 159 F.3d 246, 251 n.5 (6th Cir. 1998) (quoting *Blankenship v. Parke Care Ctrs., Inc.,* 123 F.3d 868, 872 (6th Cir. 1997)).

The Supreme Court has held that, in order to constitute actionable harassment, the conduct complained of must be judged by both an objective and a subjective standard, i.e., it must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive. *Williams,* 187 F.3d at 566; *Abeita,* 159 F.3d at 251. The harassment must be sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment. *Clark v. United Parcel Service, Inc.,* 400 F.3d 341, 351 (6th Cir. 2005); *Valentine-Johnson v. Roche,* 386 F.3d 800, 814 (6th Cir. 2004). The court considers the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Clark,* 400 F.3d at 351.

A company is automatically liable for a hostile work environment created by a superior.[7] *Id.* at 348. However, the standard differs in the case of a harassing co-worker:

> Depending upon whether the alleged harasser is a co-worker or a supervisor of the victim, there are slightly different standards for evaluating whether the employer as a whole is vicariously liable for the hostile work environment. In the case of a harassing co-worker, "an employer is liable if it knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action."" By contrast, "an employer is vicariously liable for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee."

---

[7] There is an exception to this rule where the employer exercises reasonable care to prevent and promptly remedy any sexually harassing behavior, and the plaintiff unreasonably failed to take advantage of preventive or corrective opportunities or otherwise avoid harm. *Clark,* 400 F.3d at 348. However, the exception applies only if the harassment did not result in a negative tangible employment action for the victim. *Id.*

*Id.* (citations omitted).

Defendant asserts that plaintiff has "a multitude of vague claims against a multitude of individuals" on unspecific dates and that "[m]any of her allegations do not qualify as illegal discrimination, and are not 'but for' her sex" (Def's. Br. 24-25). Further, defendant asserts that plaintiff does not deny her skills and written test failures or performance issues (*id.* at 26). Defendant argues that plaintiff has produced no evidence that her program removal was based on her sex. The Court disagrees.

Given the nature of plaintiff's discrimination claims and her factual allegations, plaintiff has established a prima facie case of hostile work environment discrimination. The basis of plaintiff's claim is that "the men in her department attempted to intimidate, threaten, humiliate, and ridicule her in an attempt to wash her out and keep the department all male" (Pl's. Br. 31). Further, she alleges that they constantly and regularly told her that women were "not wanted here" and regularly refused to help her, placing her in as uncomfortable and dangerous position as possible (*id.*). Plaintiff has submitted an abundance of documentary evidence that supports her allegations.

Viewing the factual allegations and evidence in a light most favorable to plaintiff, the harassment was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive working environment. *Clark,* 400 F.3d at 351. Defendant is not entitled to summary judgment on this claim.

C

Defendant argues that plaintiff cannot establish a retaliation claim under Title VII. Title VII protects an employee against retaliation for engaging in protected conduct. The employee must show that: 1) she engaged in an activity protected by Title VII; 2) the activity was known to the defendant; 3) she was subjected to an adverse employment action; and 4) a causal connection exists

10

between the protected activity and the adverse employment action. *McClain,* 440 F.3d at 335; *Singfield v. Akron Metro. Housing Auth.,* 389 F.3d 555, 563 (6th Cir. 2004). To establish the element of causal link a plaintiff need only "proffer evidence 'sufficient to raise the inference that her protected activity was the likely reason for the adverse action.'" *Nguyen v. City of Cleveland,* 229 F.3d 559, 565-566 (6th Cir. 2000) (citations omitted).

Defendant argues that plaintiff cannot establish the second element of her claim, that the JAC had any knowledge of her 2003 sexual discrimination complaint, and she cannot show the fourth element, a causal connection between her complaint and her removal from the Apprenticeship Program. Defendant asserts that the JAC consists of four management and four union members, from all areas of the state, and that membership changes from time to time. Defendant contends that "it is ludicrous to believe that the JAC is, after two years, retaliating" against plaintiff for a complaint in 2003 to defendant's Grand Rapids human resource consultant, Pam Bolden (Def's. Br. 29). .

In response, plaintiff relies on her attempt in 2003, and at subsequent times, to complain about the harassment of McDonald and her coworkers. She asserts that after she filed complaints against McDonald, he began harassing her further and talked even more to other linemen to make it harder on plaintiff. In the overall context of her theory and allegations, there is adequate support for plaintiff's claim of retaliation to withstand a motion for summary judgment. As noted above with respect to gender discrimination, "'[t]he burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met.'" *McClain,* 440 F.3d at 335.

V

The standard for summary judgment requires that the Court view the evidence in the light most favorable to plaintiff to determine whether there are genuine issues of material fact precluding

11

summary judgment. The party moving for summary judgment has the burden of pointing the court to the absence of evidence in support of some essential element of the opponent's case. *Celotex Corp.*, 477 U.S. at 323; *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Once the moving party has made such a showing, the burden is on the nonmoving party to demonstrate the existence of a genuine issue for trial. *Id.* Plaintiff has met this burden. In this case, the parties directly contest the material facts and their bearing on plaintiff's claims, as evidenced by the record, and even more so, in the lengthy oral argument. Accordingly, defendant is not entitled to summary judgment.

For the foregoing reasons, this Court DENIES defendant's motion for summary judgment of plaintiff's complaint. An Order will be entered consistent with this Opinion.


Date: June 12, 2008                                /s/ Janet T. Neff
                                                   JANET T. NEFF
                                                   United States District Judge