UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THERESA WALDO,

      Plaintiff,                                                    Case No. 1:06-cv-768

v.                                                           HON. JANET T. NEFF

CONSUMERS ENERGY COMPANY,

      Defendant.
_____/

## OPINION

Plaintiff filed this employment discrimination action against Defendant, her current employer, alleging claims of gender discrimination, sexual harassment–hostile work environment, and retaliation under state and federal law. Following a hearing, the Court denied Defendant's Motion for Summary Judgment in an Opinion and Order on June 12, 2008 (Dkts 115, 116). The case was tried to a jury over the course of nine days between August 14 and September 4, 2009.[1] The jury returned a verdict in favor of Defendant on all claims. Plaintiff has filed a Motion for New Trial pursuant to Federal Rule of Civil Procedure 59 with respect to her hostile work environment claim and her retaliation claim (Dkt 196). Defendant has filed a Response (Dkt 203). Having carefully considered the evidence presented at trial, the Court is persuaded that Plaintiff's Motion

---

[1] Trial was conducted on August 14, 18-20, 25, and 31, and on September 1-4, 2009.

for New Trial is properly granted with respect to her hostile work environment claim. However, Plaintiff's Motion is denied with respect to her retaliation claim.[2]

I. Background

Plaintiff filed this action on October 25, 2006, alleging seven counts: (1) gender/sexual discrimination under Title VII, 42 U.S.C. § 2000e *et seq.*; (2) sexual harassment–hostile work environment under Title VII; (3) retaliation under Title VII; (4) gender/sex discrimination under Michigan's Elliott-Larsen Civil Rights Act (ELCRA), MICH. COMP. LAWS 37.2101 *et seq.*; (5) sexual harassment–hostile work environment under the ELCRA; (6) retaliation under the ELCRA; and (7) intentional infliction of emotional distress.[3] Plaintiff's claims stem from her transfer into Defendant's Transmission Lines Department in 2001 and her entry into Defendant's four-year Line Apprentice Training Program in 2002. Plaintiff was for the most part the only female utility worker in the Transmission Lines Department. She alleged that throughout 2001 to 2005, she was subjected to gender/sex discrimination, sexual harassment, and retaliation.

Plaintiff's Complaint alleged that she was subjected to discrimination related to the terms and conditions of her employment because of her gender, including Defendant's practices and/or procedures governing job assignments, evaluation of job performance, training, and discipline (Compl.¶ 10). This included being told by her supervisor that they did not "have women in this department," have never had them here, do not want them here, and that "they are not strong

---

[2]Having presided over trial and reviewed the motion and briefs filed by the parties, the Court has determined that oral argument is unnecessary. *See* W.D. Mich. LCivR 7.3(d). The Court also notes that it has had the benefit of argument on Defendant's Motion for Summary Judgment on June 6, 2008, and Defendant's Motion for Judgment as a Matter of Law.

[3]Plaintiff later withdrew her claim of intentional infliction of emotional distress.

2

enough" (*id.* ¶ 10(a)). It also included being given outrageous and demeaning job assignments while her male coworkers stood by and watched, and being subjected to calendars, playing cards, and other pictures of naked women placed in the work environment by male coworkers (*id.* ¶¶ 10(b) and 10(d)). She was also "asked to perform extremely dangerous procedures" even though she had not yet received adequate training for that particular job (*id.* ¶¶ 10(c)).

Plaintiff's Complaint further alleged that she was subjected to constant and unwelcome gender/sexual harassment by coworkers (*id.* ¶¶ 10, 49). She reported the "unwelcome gender based offensive and derogatory comments and conduct" to Defendant's management, but Defendant failed to take prompt, adequate and remedial measures to address the gender/sexual harassment or Plaintiff's complaints (*id.* ¶¶ 12-13). Plaintiff further alleged that she was singled out by Defendant's Joint Apprenticeship Committee (JAC) because of her gender and in retaliation for previous complaints and/or grievances of harassment and discrimination (*id.* ¶ 26).

Plaintiff alleged that the discrimination and sexual harassment culminated in her being removed from the Line Apprentice Training Program and transferred to a department with lower pay (Compl. ¶ 32). On August 8, 2005, Plaintiff was assigned to work in Defendant's Sub Metro Department, where she was employed at the time of trial. Her pay was decreased by $4.00 an hour to $23.26 an hour. Further, she must begin the apprenticeship program all over again, which involves another four to five years of training/schooling (*id.* ¶ 27).

Plaintiff proceeded to trial on all six discrimination-related claims—gender/sex discrimination, hostile work environment, and retaliation, each under state and federal law. Near the end of trial, in the jury instruction conference, plaintiff agreed to withdraw her state law claims of hostile work environment and retaliation, thus leaving only four counts (under three separate

3

claims/theories) to be decided by the jury. The jury found in favor of Defendant on each of the three claims.

Plaintiff moves for a new trial only as to her hostile work environment and retaliation claims. Plaintiff concedes that different inferences and conclusions could be drawn with respect to her gender discrimination claim; thus, the verdict on that claim is not at issue.

## II. Legal Standard

Federal Rule of Civil Procedure 59 permits the trial court to "grant a new trial on all or some of the issues … after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). Generally, "a new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.,* the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon, Ohio,* 78 F.3d 1041, 1045-46 (6th Cir. 1996) (citations omitted); *accord Mike's Train House, Inc. v. Lionel, L.L.C.,* 472 F.3d 398, 405 (6th Cir. 2006).

Unlike motions for a judgment as a matter of law, in ruling on a motion for new trial, the trial court must weigh the evidence and compare the opposing proofs. *McCombs v. Meijer, Inc.,* 395 F.3d 346, 352 (6th Cir. 2005); *Woodbridge v. Dahlberg,* 954 F.2d 1231, 1234 (6th Cir. 1992). Whether to grant a motion for new trial is within the broad discretion of the trial court. *Bell v. Johnson,* 404 F.3d 997, 1002-03 (6th Cir. 2005). "The Supreme Court has noted that 'the authority of trial judges to grant new trials' pursuant to Rule 59(a) 'is large.'" *Id.* (quoting *Gasperini v. Ctr. for the Humanities, Inc.,* 518 U.S. 415, 433 (1996). Nonetheless, the motion should be denied if the verdict is one that reasonably could have been reached, regardless whether different inferences and

4

conclusions could have been drawn or other results are more reasonable. *Walker v. Bain,* 257 F.3d 660, 670 (6th Cir. 2001); *Woodbridge,* 954 F.2d at 1234.

III. Analysis

This case has a lengthy pretrial history and was well-litigated through trial to a verdict. As is frequently the case with mixed-claim discrimination cases advanced under both state and federal law, the evidence, and the legal context, becomes complicated. This was particularly so in this case, which involved claims of a course of discrimination over several years in what is historically and indisputably a tough, male-dominated work environment—linework on high-voltage electric transmission utility lines, often in remote geographic areas. Although there were only nine days of trial, those days were unavoidably interspersed over the course of three weeks because of schedule conflicts. Over the course of trial, the jury heard testimony from nineteen witnesses and was presented with voluminous documentary evidence in more than 80 exhibits.

Sorting through the factual bases of the claims, and particularly the complexities and legalities of the specific theories was a difficult task for the Court and counsel, given the independent claims, theories, defenses, time frames and participants, which included both coworkers of plaintiff and supervisory personnel. This task was ultimately passed on to the jury in as simple a posture as possible, after avid argument and concessions by counsel to resolve jury instruction issues. However, the Court observed at the time, and is even more persuaded post-trial, that deciphering the evidence in the context of the independent legal theories was a difficult charge. It is against this backdrop that the Court considers the motion for new trial, and ultimately concludes that the jury's verdict on the hostile work environment claim may not stand in the face of the evidence presented.

A. Hostile Work Environment Claim

In order to prove that a she was subject to a hostile work environment in violation of Title VII, Theresa Waldo had to show by a preponderance of the evidence that:

(1) she is a member of a protected class;

(2) she was subjected to unwelcomed sexual harassment;

(3) the harassment was based on her gender;

(4) the harassment unreasonably interfered with her work performance and created a hostile work environment; and

(5) the defendant knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action.[4]

Jury Inst. No. 18; *see also* Jury Inst. No. 24. The parties do not dispute the additional, more specific definitional standards that apply to these elements.

Plaintiff contends that the clear weight of the evidence established all of the requisite elements of her hostile work environment claim. That is, the trial testimony and exhibits proved that Plaintiff was subjected to harassment based on her gender; that the harassment had the effect of unreasonably interfering with her work performance by creating an intimidating, hostile, and offensive work environment; and that Defendant knew or should have known of the charged harassment and failed to implement prompt and appropriate corrective action (Pl. Br. 5).

---

[4]The parties ardently disputed the jury instructions concerning the various claims, in part because of the claims' factual bases and because of the distinctions between state and federal law. Ultimately, to resolve these disputes at the close of trial, Plaintiff withdrew certain state claims, and the parties agreed to other concessions to simplify the statements of the elements and definitional instructions. The Motion for New Trial is argued on the basis of the claims as set forth in the instructions, and is considered accordingly. The jury instructions are not at issue here, and the Court does not independently consider them.

Defendant concedes that Plaintiff's direct testimony was replete with allegations of a hostile work environment that appear to fall within Title VII proscriptions (Def. Br. 4). Defendant argues, however, that the jury could reasonably have found through inferences and conclusions drawn from the testimony of multiple witnesses, the jury's credibility determinations during witness presentations, and its assessment of Plaintiff's conflicting testimony, (1) that the alleged treatment/conduct claimed either did not occur or, if it did, it did not rise to the level of severity, frequency and/or pervasiveness required for a hostile work environment claim; or (2) that Plaintiff unreasonably failed to promptly report the alleged misconduct or, that if it was reported, that Defendant properly and immediately addressed it; or (3) that Plaintiff's testimony and that of her witnesses, simply was not as credible as Defendant's, and that Defendant's witnesses' testimony outweighed that of Plaintiff (Def. Br. 2).

In this case, it was undisputed that Plaintiff had established the first element of a hostile work environment claim. Thus, the Court considers the evidence on the remaining elements in light of the definitional jury instructions (*see* Def. Br. Ex. 1, Jury Inst. Nos. 24-27). The Court concludes that the testimony and evidence clearly established these elements were met.

As Plaintiff states (and the defense essentially concedes), Plaintiff's lengthy direct testimony was replete with allegations of a hostile work environment: egregious actions she endured and sexually offensive and demeaning language she was subjected to while in the Line Apprentice Training Program. Foul, sexually offensive language was routine in the work environment, especially ongoing, derogatory, sexually-offensive references to Plaintiff as a female, including the men calling her "cunt," "bitch," "wench," "fucking stupid idiot," etc. Plaintiff testified in detail about other specific instances of this ongoing conduct. For instance, she was told by her supervisor,

7

Jim McDonald, on more than one occasion that he would "wash" her out of the line apprentice program.[5] She was locked in a regularly used port-a-potty on a hot 90-degree day. She was told to clean up tobacco spit of the male workers, and when she refused, the men locked her in the trailer so that she could not leave. (*See* Pl. Br. 6; Def. Br. 4).

Plaintiff worked in remote areas with no provisions for the necessities of feminine hygiene; plaintiff was told that she could use the woods for bathroom purposes, the same as the men, and when she did, she had no means of disposing of used feminine hygiene products. She was told that no purses were allowed in the crew trucks, because it was too "girlie girl" for the man's world, and when she did carry a purse (for instance, to carry feminine hygiene products), the purse was thrown from the truck into the dirt by male co-workers, and when she then carried a smaller purse-wallet, she was labeled a "lesbian," and/or "dike." She was told to urinate like the men by opening the bin door of the truck and relieving herself on the steps.

Plaintiff testified that she had to endure sexually explicit materials in the work place/trucks, including pornographic magazines. Further, male workers generally ignored or shunned her to the extent that she was denied help and learning opportunities. In this regard, Plaintiff testified that her instructor at a training facility pointed a red laser light at her head and said "right there with a .22 shell." The above are only notable examples of the conduct that were testified to at trial.

Plaintiff concedes that she testified that this sexually offensive conduct occurred routinely in the transmission department, as opposed to the distribution department. However, there was testimony that such conduct continued to some extent, in one form or another, during the period of

---

[5]No final transcripts of the trial have been prepared. The Court therefore offers no citation to the record. Nevertheless, the nature of Plaintiff's testimony is not subject to dispute.

her employment with Defendant in question. There was clear and ample evidence that the harassment interfered with Plaintiff's work performance.

Defendant attempts to isolate certain aspects of the harassment or conduct to excuse or explain away its factual basis or legal significance with regard to the jury's ultimate conclusion. The Court is unpersuaded by these arguments. Given the clearly and extremely offensive nature of the harassment that occurred, the conduct cannot be excused as "occasional horseplay, sexual flirtation, sporadic or occasional use of abusive language, gender-related jokes, and occasional teasing." *See* Jury Inst. No. 26.

Further, although Defendant argues that Plaintiff's testimony was contradictory and not credible in the face of defense witnesses' testimony, there was ample witness testimony and documentary evidence to mandate a conclusion that Plaintiff was continually subjected to a hostile work environment based on sexual harassment. A number of witnesses, including witnesses for the defense, provided testimony that validated Plaintiff's essential allegations of sexual harassment–hostile work environment. As Plaintiff notes, Jeffrey Barnes stated that he heard Scott Doyle comment that he did not want to work around Plaintiff because she was a woman and that women were not strong enough to do the work, and that Barnes recalled occasions when Doyle did not want to assist Plaintiff, which was essential to safely carry out the line work.

Of particular significance in the evidence presented was the surprise testing at the final step of Plaintiff's four-year apprenticeship, which was contrary to well-established procedure and which culminated in Plaintiff's removal from the four-year Line Apprentice Training Program after she had successfully completed all the requisite preceding steps over a three-year period. No matter how this incident was portrayed to the jury during trial by the defense, the Court finds the evidence

clearly pointed to a targeted, and gender-based reaction related to Plaintiff as a female, if not in purpose, at least in the manner it was carried out. Such conclusion is supported not only implicitly by the testimony and evidence as a whole, but also explicitly by testimony of a male employee at the time of the incident. This "straw that broke the camel's back" clearly was not a figment of Plaintiff's imagination or an emotional distortion of her treatment in the work environment.

Defendant argues that Plaintiff's brief fails to set forth a proper chronology of events, which produces a blurring effect of the allegations, time frames, and improperly conjoins Plaintiff's work in different departments at different times (Def. Br. 2-3). The Court finds these arguments unpersuasive with respect to a claim of a hostile work environment, which by definition must be determined:

> *by looking at all the circumstances* including the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating; and whether it unreasonably interfered with the employee's work performance. The effect on the employee's mental and emotional well-being is also relevant to determining whether the plaintiff actually found the workplace environment to be hostile or abusive; but while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

Jury Inst. No. 26 (Hostile or Abusive Work Environment – Defined) (emphasis added).

Dissecting the conduct to defeat its particular significance, as suggested by the defense, undermines the entire theory and purpose of a hostile work environment cause of action. The conduct must be considered as a whole, looking at all the circumstances, its frequency, severity and nature. Taken as a whole, the evidence established that the harassment unreasonably interfered with Plaintiff's work performance and created a hostile work environment as defined in the jury instructions.

Finally, Defendant argues that the jury could have reasonably found that Plaintiff failed to establish the fifth element of her claim, i.e., that "Defendant knew, or should have known of the charged sexual harassment or hostile or abusive environment and failed to implement prompt and appropriate corrective action." The Court finds the evidence to the contrary. The record was clear that Plaintiff complained at various times and various levels about discriminatory treatment and harassing conduct in the work place. Given their nature, these complaints, from a legal standpoint, warranted a response well beyond that provided by Defendant, which essentially was an ineffective and unmonitored attempt at employee diversity training or sporadic reactions.

This case involves what has historically and indisputably been a difficult, male-dominated work environment. That is not to say that Plaintiff's claims of discrimination were worthy of any predetermined significance. Rather, it is simply to say that the proofs ultimately mirrored the *culture* of discrimination itself. That is, Plaintiff worked on a daily basis in a traditionally male-dominated work force, where she was outnumbered, outranked, and out-posted, so to speak, with a group of men. Much of the alleged day-to-day discrimination took place beyond the confines of the mainstream workplace, in remote areas. Consequently, much of the evidence of discrimination necessarily was drawn from that environment and those witnesses, most of whom were men involved in the male-dominated work culture. The Court is persuaded that the difficulty of sorting through the factual bases for the separate legal claims, coupled with the unusual influence of the culture/testimony denying any gender bias, led to a seriously erroneous result that was contrary to the proofs.

> [I]n ruling upon a motion for a new trial based on the ground that the verdict is against the weight of the evidence, the trial court must compare the opposing proofs, weigh the evidence, and set aside the verdict if it is of the opinion that the verdict is against the clear weight of the evidence. It should deny the motion if the

> verdict is one which could reasonably have been reached, and the verdict should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable.

*Strickland v. Owens Corning,* 142 F.3d 353, 357 (6th Cir. 1998) (quoting *J.C. Wyckoff & Assocs., Inc. v. Standard Fire Ins. Co.,* 936 F.2d 1474, 1487 (6th Cir. 1991) (citation omitted).

Despite the clear evidence presented, the jury found that Plaintiff was not subjected to a hostile or abusive work environment because of her sex or gender. It is the Court's firm view, having presided over the trial and having carefully weighed the evidence presented, that the jury's verdict on the hostile work environment claim should be set aside as against the clear weight of the evidence.

B. Retaliation

Plaintiff also seeks a new trial on her Retaliation claim. Plaintiff argues that there was no dispute that she complained to multiple people at different times of wrongful, discriminatory and harassing conduct. She further asserts that there was extensive testimony regarding adverse employment actions that occurred after her complaints, including lack of overtime; fear of additional retaliation as a result of complaining; isolation by supervisors and coworkers that resulted in a failure to be instructed properly; removal from the apprentice class; failure to inform Plaintiff of the subject matter of her subsequent tests; and failure to retest her on the same subject matter after removal from the apprentice training program (Pl. Br. 12). Plaintiff cites the corroborating testimony of defense witnesses/employees, including Mike Cutts' testimony that the JAC testing of Plaintiff on April 18, 2005 at the end of Step IV, was inappropriate and that the male Committee members were unfairly attempting to remove Plaintiff from this late stage in the Line Apprentice Training Program simply because she was a woman.

While the Court agrees that this evidence was sufficient to establish Plaintiff's claim of retaliation, the Court also finds that the determination by the jury was reasonable, and not against the great weight of the evidence. This is particularly so given the overwhelming evidence of a hostile work environment, which existed independently of any specific complaint (or protected activity) by Plaintiff, and which may simply account for the various alleged adverse actions above. The jury could reasonably conclude, as Defendant argues, that the protected activity was not the likely reason for the adverse action taken after March 12, 2005. *See* Jury Inst. No. 28. Thus, Plaintiff is not entitled to a new trial on her retaliation claim.

## IV. Conclusion

Having considered the entire context of this case and the evidence presented at trial, the Court concludes that a new trial is warranted on Plaintiff's hostile work environment claim. However, Plaintiff is not entitled to a new trial on her claim of retaliation.

An Order will be entered consistent with this Opinion.

DATED: June 4, 2010  /s/ Janet T. Neff
JANET T. NEFF
United States District Judge