UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THERESA WALDO,

        Plaintiff,                                             Case No. 1:06-cv-768

v.                                                           HON. JANET T. NEFF

CONSUMERS ENERGY COMPANY,

        Defendant.
_____/

## OPINION

This multi-claim employment discrimination case has a lengthy history, having twice been tried to a verdict in jury trials. At the conclusion of the second trial, solely on Plaintiff's claim of sexual harassment–hostile work environment pursuant to federal law, the jury returned a verdict in favor of Plaintiff. The jury awarded $400,000 in compensatory damages and $7,500,000 in punitive damages.

The matter is now before the Court on "Defendant's Motion Renewing its Prior Motion for Judgment as a Matter of Law Pursuant to F.R. Civ. P. 50(b)" (Dkts 263, 264) and "Defendant's Motion to Alter Judgment and Remit Damages" (Dkts 265, 266). Plaintiff has filed a Brief in Opposition to each motion (Dkts 276, 281). Having fully considered the parties' arguments and the record, the Court denies Defendant's renewed motion for judgment as a matter of law, but grants in part the motion to alter judgment and remit damages, and remits compensatory damages to the

statutory damages cap of $300,000.[1]

## I.  Background

In her complaint, Plaintiff alleged claims of gender discrimination, sexual harassment–hostile work environment, and retaliation under state and federal law, stemming from her transfer into Defendant's Transmission Lines Department in 2001 and her entry into Defendant's four-year, four-step Line Apprentice Training Program in 2002.[2]  Plaintiff was for the most part the only female utility worker in the Transmission Lines Department.  She alleged that throughout 2001 to 2005, she was subjected to gender/sex discrimination, sexual harassment, and retaliation, culminating in her dismissal from the Apprenticeship Program at Step Four, thereby denying her a journeyman card.  At the time of trial, Plaintiff remained employed with Defendant, but had transferred to the SubMetro Department, having had to start over with a new four-year apprentice training program (Tr. 9/24/10, Dkt 297 at 89).

On June 12, 2008, the Court denied Defendant's motion for summary judgment (Dkts 115, 116).  The case was then tried over the course of nine days in August and September 2009.  The jury returned a verdict in favor of Defendant on the three claims submitted to the jury:  gender discrimination, sexual harassment–hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

Plaintiff filed a Motion for New Trial pursuant to Federal Rule of Civil Procedure 59 with

---

[1]Having presided over both trials and reviewed the motions and briefs filed by the parties, the Court has determined that oral argument is unnecessary.  *See* W.D. Mich. LCivR 7.2(d).  The Court has also had the benefit of the parties' previous argument on judgment as a matter of law.

[2]Plaintiff also alleged, but later withdrew, a state-law claim of intentional infliction of emotional distress.

respect to her sexual harassment–hostile work environment claim and her retaliation claim (Dkt 196).  The Court denied the motion as to the retaliation claim but granted the motion with respect to the hostile work environment claim (Dkts 204, 205).  The case was tried before a jury again over nine days in September and October 2010.  The jury returned a verdict in favor of Plaintiff as noted above.  Defendant renews its motion for judgment as a matter of law on the grounds that the jury did not have a legally sufficient evidentiary basis to find for Plaintiff.  Defendant also seeks remittitur to the Title VII statutory damages cap of $300,000, and further remittitur on various grounds to a final award of $16,000 compensatory damages and zero punitive damages.

## II.  Judgment as a Matter of Law

### A.  Legal Standard

"If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

>  (A) resolve the issue against the party; and

>  (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."

FED. R. CIV. P. 50(a).  When reviewing a motion for a judgment as a matter of law based on insufficiency of the evidence, the court should not weigh the evidence, evaluate the credibility of witnesses, or substitute its judgment for that of the jury; rather, it must view the evidence in a light most favorable to the party against whom the motion is made, and give that party the benefit of all reasonable inferences.  *Arban v. West Publ'g Corp.,* 345 F.3d 390, 400 (6th Cir. 2003); *Hall v.*

*Consol. Freightways Corp. of Del.,* 337 F.3d 669, 672 (6th Cir. 2003).  The motion should be granted "'only if a complete absence of proof exists on a material issue in the action, or if no disputed issue of fact exists on which reasonable minds could differ.'"  *Karam v. Sagemark Consulting, Inc.,* 383 F.3d 421, 427 (6th Cir. 2004) (quoting *LaPerriere v. Int'l Union UAW,* 348 F.3d 127, 132 (6th Cir. 2003)); *see also Hall,* 337 F.3d at 672.  If a party files a renewed motion for judgment as a matter of law after a jury verdict, the court may allow judgment on the verdict or direct the entry of judgment as a matter of law.  FED. R. CIV. P. 50(b).

### B.  Plaintiff's Hostile Work Environment Claim

As set forth in this Court's previous opinion on the Motion for New Trial (Dkt 204 at 3), Plaintiff's Complaint alleged that she was subjected to constant and unwelcome gender/sexual harassment by coworkers and supervisors (Compl. ¶¶ 10, 49).  She reported the "unwelcome gender based offensive and derogatory comments and conduct" to Defendant's management, but Defendant failed to take prompt, adequate and remedial measures to address the gender/sexual harassment or Plaintiff's complaints (*id.* ¶¶ 12-13).  Plaintiff further alleged that she was singled out by Defendant's Joint Apprenticeship Committee because of her gender and in retaliation for previous complaints and/or grievances of harassment and discrimination (*id.* ¶ 26).

Plaintiff alleged that the discrimination and sexual harassment culminated in her being removed from the Line Apprentice Training Program and transferred to a department with lower pay (Compl. ¶ 32).  On August 8, 2005, Plaintiff was assigned to work in Defendant's Sub Metro Department, where she was employed at the time of trial. Her pay was decreased by $4.00 an hour to $23.26 an hour.  Further, she must begin the apprenticeship program all over again, which involves another four to five years of training/schooling (*id.* ¶ 27).

In order to prove that she was subject to a hostile work environment in violation of Title VII, Plaintiff had to show by a preponderance of the evidence:

(1) that she is a member of a protected class;

(2) she was subjected to unwelcomed sexual harassment;

(3) the harassment was based on her sex;

(4) the harassment unreasonably interfered with her work performance and created a hostile work environment; and

(5) the defendant knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action.

*See Blankenship v. Parke Care Ctrs., Inc.,* 123 F.3d 868, 872 (6th Cir. 1997) (cited by Defendant); *see also* Final Jury Insts. (Tr. 10/1/10, Dkt 301 at 12, 14; Def's. Br. Ex. 1, Dkt 266-2 at 4). The parties do not dispute the additional, more specific definitional standards that apply to these elements (*see* Dkt 301 at 12-18).

As Defendant notes, Defendant is entitled to an affirmative defense where a supervisor's sexual harassment is alleged and where, as here, Plaintiff makes no claim of a tangible adverse employment action. *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765 (1998); *accord Faragher v. City of Boca Raton,* 524 U.S. 775, 807 (1998). Defendant has the burden of establishing two elements for this affirmative defense: (1) Defendant exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (2) Plaintiff unreasonably failed to take advantage of any protective or corrective opportunities provided by Defendant (*see* Tr. 10/1/10, Dkt 301 at 13) or avoid harm otherwise. *See Burlington Indus.,* 524 U.S. at 765; *accord Faragher,* 524 U.S. at 807.

Defendant sets forth four separate categories of argument, although the legal and factual grounds for judgment as a matter of law are somewhat overlapping and commingled. Defendant's essential arguments appear to be: (1) Plaintiff presented no evidence to support her allegations of sexual harassment–hostile work environment against her Transmission Department Supervisors, Cory and McDonald, and additionally, Defendant has established both elements of the applicable affirmative defense; (2) Defendant responded immediately to all misconduct by coworkers reported by Plaintiff and cannot be held liable for misconduct that Plaintiff failed to report; and (3) Plaintiff failed to establish the fourth element of her claim, i.e., the harassment unreasonably interfered with her work performance and created a hostile work environment.

Defendant relies on numerous, selected bits of evidence to draw inferences favorable to Defendant, while ignoring the overwhelming evidence to the contrary that fully supported Plaintiff's claims. While the evidence cited by Defendant *could potentially* weigh in favor of Defendant's arguments, Defendant cites no evidence that is dispositive of Plaintiff's claims or that in any way mandates a finding in favor of Defendant on the hostile work environment claim.

In response, Plaintiff argues that "[t]he jury had more than enough legally sufficient evidence to find that [Plaintiff] was sexually harassed in the form of a hostile work environment by both supervisors and co-workers . . ." (Pl's. Br., Dkt 276 at 1-2). Plaintiff sets forth in great detail specific testimony and other evidence sufficient to establish each element, including element four, of her hostile work environment claims against Defendant based on both supervisor and coworker sexual harassment. For the reasons stated previously in denying Defendant's motion for judgment as a matter of law (Tr. 9/30/10, Dkt 300 at 199-214), and in light of the record evidence cogently set forth by Plaintiff, the Court finds Defendant's arguments without merit.

6

The law requires that Plaintiff show by a preponderance of the evidence that the workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (*see* Tr. 10/1/2010, Dkt 301 at 16-17). Further, Plaintiff is required to prove by a preponderance of the evidence that the hostile work environment "be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher,* 524 U.S. at 787 (1998) (*see* Tr. 10/1/2010, Dkt 301 at 17).

This case involved voluminous testimony and evidence. Plaintiff's testimony was replete with conditions of a hostile work environment that fall within the Title VII proscriptions, and these conditions were corroborated by other witness testimony and evidence.

As Plaintiff sets forth in her brief (Dkt 276 at 4-6), testimony and other evidence at trial established that Plaintiff's work environment was filled with sexually offensive and derogatory language and conduct from the beginning of her apprenticeship training in the Transmission Lines Department and continuing throughout her training. Plaintiff's testimony established that on the first day of the apprenticeship program orientation, Plaintiff's immediate supervisor, Jim McDonald, stated that she and other women were not wanted, welcomed, or accepted in the Transmission Department and that McDonald intended to wash her out. Plaintiff was constantly subjected to foul, sexually offensive language in her workplace, including the men calling her "cunt," "bitch," "wench," "fucking stupid," "stupid bitch," and "stupid cunt," etc. Plaintiff testified that she had to endure sexually explicit materials in the workplace/trucks. Plaintiff was subjected to pornographic magazines, calendars, playing cards, and other pictures of naked girls and women in plain sight in

7

the trucks and worksites. Plaintiff's testimony was supported by a coworker, Sheryl Horter, who likewise testified of these pervasive, hostile working conditions.

Plaintiff was harassed by the men when she carried a purse to work, and when she brought a smaller wallet to work, she was called a "lesbian" or "dike." She had no provisions for the necessities of feminine hygiene. She was told that if she needed to use the restroom, she had better urinate "like the men," on the bin or steps of the trucks.

There was testimony and other evidence of numerous incidents of Plaintiff being singled out for demeaning tasks and even difficult or dangerous assignments because she was a female. Plaintiff was intentionally trapped in a porta-potty that had been used earlier in the day by male crew members, who drove a truck against the door of the porta-potty to block her escape. Plaintiff was singled out and required to climb high transmission towers on a cold, windy day without the proper training and safety equipment. As a part of her "initiation" she was told to clean tobacco spit and chew that male crew members had spat on the floor; she refused, despite potential repercussions.

Further, male workers generally ignored or shunned her to the extent that she was denied help and learning opportunities. They would refuse to speak to her about safety issues or inform her about the job and the hazards. If she made a mistake, she would be the target of safety complaints and her competency and ability to focus on tasks would be questioned. Ultimately, Plaintiff was singled out by Defendant's Joint Apprentice Committee because of her gender and for her complaints and/or grievances regarding harassment. She was singled out for special field testing near the end of Step Four of the Apprentice Program and ultimately removed from the training.

The evidence established that the abusive and degrading language and conduct occurred so routinely and was so flagrant that it interfered with Plaintiff's work performance. Further, there was

ample testimony and evidence to establish the fifth element of Plaintiff's claim: that Defendant knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action. As this Court noted following the first trial (Op., Dkt 204 at 11), and again finds from testimony and evidence in the second trial, "Plaintiff complained at various times and various levels about discriminatory treatment and harassing conduct in the work place. Given their nature, these complaints, from a legal standpoint, warranted a response well beyond that provided by Defendant, which essentially was an ineffective and unmonitored attempt at employee diversity training or sporadic reactions."

Finally, contrary to Defendant's argument, the evidence did not conclusively establish, by a preponderance of the evidence, that Defendant was entitled to the affirmative defense to supervisor liability. This defense is comprised of two necessary elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher,* 524 U.S. at 807. There was ample evidence from which the jury could conclude that these elements were not met, again based on the record evidence set forth by Plaintiff (Pl's. Br., Dkt 276 at 7-10).

As Plaintiff points out, Defendant's arguments for judgment as a matter of law are premised on factual disputes or credibility determinations, which were properly considered and resolved by the jury—to an outcome contrary to that espoused by Defendant. On a renewed motion for judgment as a matter of law, this Court must draw all reasonable inferences in favor of the nonmoving party, in this case, Plaintiff, and the Court may not weigh the evidence or make

credibility determinations. *See Arban,* 345 F.3d at 400; *Hall,* 337 F.3d at 672. The Court may not substitute its judgment for that of the jury. *Arban,* 345 F.3d at 400; *Hall,* 337 F.3d at 672.

Defendant's motion is properly granted only if there is a complete absence of proof on a material issue in the action, or if there is no disputed issue of fact on which reasonable minds could differ. *See Karam,* 383 F.3d at 427. Given the extensive record evidence supporting the jury verdict, Defendant's renewed motion for judgment as a matter of law is properly denied.

### III.  Remittitur

The jury awarded Plaintiff $400,000 in compensatory damages and $7,500,000 in punitive damages. Defendant seeks remittitur to the Title VII statutory damages cap of $300,000, and further remittitur to comport with due process, to $160,000 in punitive damages and $16,000 compensatory damages, or alternatively, a denial of punitive damages altogether on the ground that Plaintiff did not meet her burden of showing malice or reckless disregard on behalf of Defendant, thus reducing Plaintiff's final award to $16,000 compensatory damages.

Title VII limits the combined amount of compensatory and punitive damages a plaintiff may recover:

> The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party--
>
> * * *
>
> (D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

42 U.S.C. § 1981a(b)(3)(D).

Defendant contends that under 42 U.S.C. § 1981a, Plaintiff's compensatory and punitive damages are capped at $300,000. Plaintiff does not concede, but does not disagree, that the statutory cap applies to the damages award in this case. Plaintiff states that she does not agree with the statutory cap, but offers no authority for this Court's disregard of the statute. Therefore, remittitur is granted to the statutory damages cap of $300,000 in accordance with § 1981a(b)(3)(D).

Defendant's arguments for remittitur below the statutory cap are otherwise without merit. The Court finds no basis for proportionally reducing damages under § 1981a(b)(3)(D), based on the ratio of compensatory to punitive damages awarded by the jury. Further, an award of $300,000 does not offend due process. *See BMW of N. Am. v. Gore,* 517 U.S. 559, 574-75 (1996) (cited by Defendant). Defendant's final argument—that punitive damages should be denied altogether based on a lack of evidence—is rejected. Defendant contends in this regard that Plaintiff did not meet her burden of showing malice or reckless disregard, and that Defendant engaged in good faith efforts to comply with Title VII. Having twice presided over trials in this case with essentially the same witness testimony and evidence, the Court finds this argument wholly contrary to the record.

Defendant does not contend that the jury was not properly instructed on the award of punitive damages in accordance with the applicable law (*see* Tr. 10/1/2010, Dkt 301 at 19-21). "To recover punitive damages under the statute, a plaintiff must demonstrate that his employer engaged in a discriminatory practice 'with malice or with reckless indifference to the [plaintiff's] federally protected rights.'" *Hall,* 337 F.3d at 673 (quoting *Kolstad v. Am. Dental Ass'n,* 527 U.S. 526, 535 (1999) (quoting 42 U.S.C. § 1981a(b)(1)) (internal quotations omitted). The jury was instructed that to award punitive damages, it must find: "First, that James McDonald, William Eckert or Pamela Bolden, or another employee of the defendant acting in a managerial capacity acted with malice, that

11

is, ill-will, or reckless indifference to plaintiff's federally protected rights; and second, that defendant, Consumers Energy itself had not acted in good faith, in a good faith attempt to comply with the law by actually implementing and enforcing adopted policies and procedures designed to prohibit such discrimination in the workplace" (*id.* at 20-21).

Defendant's assertions and arguments mischaracterize the record evidence. Contrary to Defendant's contentions, the testimony and other evidence in this case established the necessary elements of, and fully supported an award of, punitive damages, including malice and reckless indifference. The record established that despite the pervasive sexual harassment and hostile work environment in the Transmission Department, Plaintiff's numerous complaints, particularly to her supervisor Jim McDonald, went unheeded. Evidence at trial of the lack of response on the part of Defendant to such egregious and abusive, pervasive and continuing conduct, which evidence showed clearly endangered Plaintiff in the workplace, could hardly be considered a "good faith" effort to remedy this sexually hostile work environment, and fully supported the jury's award of punitive damages.

After having tried this case on a number of overlapping and legally confusing claims in 2009, the parties went to trial in 2010 solely on Plaintiff's claim of a hostile work environment. After hearing eight days of evidence on this claim, the jury, as the factfinder, clearly found Defendant's conduct so egregious that very significant punitive damages were warranted under the law. The jury was obviously unaware that its award of $7,500,000 could not be effectuated as awarded. If the Court had the authority to award punitive damages to effectuate the jury's determination, it would do so. This Court has presided over this litigation for the past four years. Having twice presided

over trial and heard the witnesses' testimony and other evidence, this Court has no doubt that the jury's award of punitive damages was proper based on the evidence and law.

Nonetheless, having determined that remittitur is mandated pursuant to statute, the Court must address the assignment of damages. Plaintiff requests that if this Court grants remittitur to the statutory cap, the jury's award of $400,000 compensatory damages be remitted to $300,000 compensatory damages. The jury was fully instructed on the award of damages and, specifically instructed that "[c]ompensatory damages may include emotional distress and humiliation, as well as out-of-pocket costs" (Tr. 10/1/2010, Dkt 301 at 19). The jury clearly found that Plaintiff was entitled to an award of $400,000 to compensate her for such injuries. Accordingly, the Court agrees with Plaintiff that remitting compensatory damages to $300,000 is justified and reasonable to, as much as possible, compensate Plaintiff for the injuries suffered.

## IV.  Conclusion

This Court denies "Defendant's Motion Renewing its Prior Motion for Judgment as a Matter of Law Pursuant to F.R. Civ. P. 50(b)" (Dkt 263). The Court grants in part and denies in part "Defendant's Motion to Alter Judgment and Remit Damages" (Dkt 265); the jury's award of $400,000 compensatory damages is remitted to an award of $300,000, solely to comply with the statutory cap under 42 U.S.C. § 1981a(b)(3)(D).

An Order and Amended Judgment will be entered consistent with this Opinion.


DATED: September 30, 2011               /s/ Janet T. Neff
                                        JANET T. NEFF
                                        United States District Judge