UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THERESA WALDO,

        Plaintiff,                                  Case No. 1:06-cv-768

v.                                               HON. JANET T. NEFF

CONSUMERS ENERGY COMPANY,

        Defendant.
_____/

**OPINION**

This civil rights discrimination case is before the Court on Plaintiff's Motion for Attorneys' Fees and Costs (Dkt 258), which was held in abeyance pending the Court's resolution of Defendant's post-judgment motions. Having resolved the post-judgment motions and entered a final judgment, the Court ordered the completion of briefing on the motion for fees and costs. Defendant has filed a Response (Dkt 317), and Plaintiff thereafter filed a Reply by leave of the Court (Dkt 321).

I.  Background

This multi-claim employment discrimination case has a lengthy history, having twice been tried to a verdict in jury trials. At the conclusion of the second trial, solely on Plaintiff's claim of sexual harassment–hostile work environment pursuant to federal law, 42 U.S.C. § 1983, the jury returned a verdict in favor of Plaintiff. The jury awarded $400,000 in compensatory damages and $7,500,000 in punitive damages. The Court thereafter granted in part Defendant's motion to alter

the judgment and remit damages, remitting the damages award to the statutory damages cap of $300,000, consisting wholly of compensatory damages.

Plaintiff now seeks an award of attorney fees and costs as the prevailing party. Plaintiff moves for taxed costs pursuant to FED. R. CIV. P. 54 (d)(1) and 28 U.S.C. §§ 1920 and 1821 and for an award of attorneys' fees and costs pursuant to FED. R. CIV. P. 54(d); Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e *et seq.*; and the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (Pl. Mot., Dkt 258, at 2). Plaintiff requests $685,506.25 in attorneys' fees to date and $38,879.05 in costs.

## II. Legal Standards

Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, authorizing the district courts, in their discretion, to award reasonable attorneys' fees to the prevailing party in § 1983 federal civil rights litigation. "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley v. Eckerhart,* 461 U.S. 424, 429 (1983) (quoting H.R. Rep. No. 94-1558, p. 1 (1976)). "Congress viewed the fees authorized by § 1988 as 'an integral part of the remedies necessary to obtain' compliance with § 1983." *Maine v. Thiboutot*, 448 U.S. 1, 11 (1980) (quoting S. Rep. No.94–1011, p. 5 (1976), U.S. Code Cong. & Admin. News 1976 at 5913). "Courts interpret the §1988 fee-shifting statute to mean that attorneys' fees should be awarded to a prevailing plaintiff almost as a matter of course. Fees should be denied to a prevailing plaintiff only when 'special circumstances' would make a fee award unjust." M. SCHWARTZ & K. URBONYA, Section 1983 Litigation: Attorneys' Fees § XXII, p. 197 (2d ed. 2008) (citation omitted).

"To be a 'prevailing party,' a party must 'succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Phelan v. Bell,* 8 F.3d 369, 373 (6th Cir. 1993) (quoting *Hensley,* 461 U.S. at 433) (citation omitted). *See also American Atheists v. City of Detroit Downtown Dev.,* 567 F.3d 278, 301 (6th Cir. 2009) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111 (1992)) ("a plaintiff 'must obtain at least some relief on the merits of his claim'" to qualify as a prevailing party under 42 U.S.C. § 1988(b)).

The Court must arrive at a reasonable fee, "one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock-Ladd v. Sec'y of Treasury,* 227 F.3d 343, 349 (6th Cir. 2000) (citing *Reed v. Rhodes,* 179 F.3d 453, 471 (6th Cir. 1999)). The starting point for determining a reasonable fee is the "lodestar" calculation: the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Jordan v. City of Cleveland,* 464 F.3d 584, 602 (6th Cir. 2006); *see Hensley,* 461 U.S. at 433 ("most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate"). "To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist,* 372 F.3d 784, 791 (6th Cir. 2004).

Once the lodestar figure is determined, the court may consider other factors to adjust the award upward or downward to achieve a reasonable result. *Geier, supra* at 792. The Supreme Court has cited twelve factors that may be relevant, although many of these factors are generally subsumed in the initial lodestar calculation. *Id.* These factors, known as the "*Johnson* factors" are: "(1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to

3

perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Geier,* 372 F.3d at 792; *see Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974). The party seeking attorney fees bears the burden of documenting the entitlement to the award with evidence supporting the hours worked and rates claimed. *Gonter v. Hunt Valve Co., Inc.,* 510 F.3d 610, 617 (6th Cir. 2007); *Reed,* 179 F.3d at 472.

III. Analysis

Plaintiff's request for attorney fees and costs is well-supported and well-warranted in this case. Despite the arduous and extenuated proceedings, Plaintiff's counsel competently and professionally litigated this case for more than five years to a favorable conclusion, as demonstrated by a jury verdict of $7,900,000 on Plaintiff's discrimination claim. The claims set forth were by no means straightforward and were more than capably presented to the jury by Plaintiff's counsel. The Court concludes that Plaintiff's request for fees and costs is reasonable and is commensurate with the complexities of this case, and should be granted to the fullest extent permitted by the law.

A. Attorney Fees

Plaintiff requests fees of $685,506.25, most of which relates to time expended litigating this case over the course of five years by counsel of record, Stephen R. Drew and Adam C. Sturdivant. Plaintiff seeks an hourly rate of $400 for lead counsel Drew for 1,346.75 hours expended, and an hourly rate of $200 for associate counsel Sturdivant for 576.87 hours. Plaintiff also seeks a minimal

amount for the assistance of two other attorneys, at the rate of $285 an hour for 5 hours for partner Thomas Hubbard, and $300 an hour for .75 hours by partner Ann Cooper. Plaintiff requests additional rates of $100 per hour for paralegal work and $150 for law clerk work.

Defendant contends that Plaintiff should be entitled to a total award of no more than $187,871.92 in attorney fees. Defendant objects to the hourly rates, contending that lead counsel's hourly rate should be reduced to $250, associate counsel's rate reduced to $150, and the paralegal and law clerk rate reduced to $75. As to the number of hours, Defendant argues that Plaintiff should not be awarded fees associated with her "unsuccessful" claims, including her first trial, and pretrial time spent on her disparate treatment gender discrimination and retaliation claims. Defendant also objects to time for non-core legal time, including 5 hours of Attorney Sturdivant's time for media activities; the full-time billing for traveling; and billing attorney or paralegal time for administrative or clerical tasks.

With the exception of the 5 hours billed for Attorney Sturdivant's time for media relations, the Court finds Defendant's challenges without merit. Plaintiff has submitted a comprehensive affidavit of Stephen Drew in support of the motion for fees and costs (Dkt 260), and extensive time records for all attorneys, paralegals, and law clerks who worked on this matter (Dkt 260-1). The requested fees and costs are reasonable based on the nature of the case proceedings, Plaintiff's documentation, other decisions of courts in this federal district, and this Court's own familiarity with the market rates for legal services in this community, where the undersigned has practiced and served as a jurist in both state and federal court for more than 40 years.

The Court finds the hourly rates for counsel wholly appropriate based on their documented skill, reputation, and experience, and in keeping with the prevailing market rate for lawyers of

5

comparable skill and experience. The Court has likewise considered the documented number of hours expended by counsel on this matter and finds the amount of time and the overall fees requested reasonable, in light of the *Johnson* factors.

1. Hourly Rates and Time Expended

The hourly rates requested by Plaintiff are reasonable, as is the time expended. The majority of the work was performed by lead counsel, which is well justified given the complexity of this discrimination case and the necessity of presenting proofs to defend against a parade of defense witnesses, particularly the host of male utility line workers, whose often uniform testimony was merely reflective of the historically male-dominated hostile work culture at issue in this case. The Court finds the $400 hourly rate for lead counsel, which, while not an average in this community, is justified and reasonable based on the rate that lawyers of comparable skill and experience could reasonably expect to command within this venue. *See Geier,* 372 F.3d at 791.

Attorney Drew is a highly respected, experienced and accomplished practitioner in civil rights and employment litigation, and without question, exceptional in his background and skills, as set forth by Plaintiff (Reply, Dkt 321 at 9). Plaintiff appropriately cites the award of fees at a $400 hourly rate in other cases in this district (Pl. Br., Ex. 1, Dkt 259-1), and the Court notes its own previous finding that a $400 hourly rate is reasonable in exceptional cases such as this. *See, e.g., Groth v. Bosch,* Case No. 1:07-cv-962 (W.D. Mich. 2009) (Dkts 68, 77). As Plaintiff notes, this rate is in keeping with the rates reflected in the State Bar of Michigan 2010 Survey, which ranged as high as $420 an hour for the Grand Rapids, Michigan area (Def's. Br., Dkt 317-8 at 7 [Ex. 6]; Reply, Dkt 321 at 9). Defendant's objection that Attorney Drew's hourly compensation exceeds the average is without merit.

Based on prevailing market rates in the Grand Rapids legal community, and for similar reasons, the Court finds the remaining attorney, law clerk and paralegal hourly rates reasonable. Plaintiff points out that contrary to Defendant's assertions, associate counsel Sturdivant was not admitted to the Bar in 2008, but instead has been licensed to practice in Ohio since 2006, and is licensed to practice in federal courts in both Ohio and Michigan (Reply, Dkt 321, at 11). The Court finds $200 a reasonable hourly rate based on associate counsel's capable involvement in this case, his background and experience, and prevailing market rates.

Likewise, the time expended by counsel and support staff is reasonable, with the exception that the 5 hours identified as marketing hours is non-compensable. The total attorney fees for Attorney Sturdivant is therefore reduced by $1,000. Of particular note, the Court rejects Defendant's complaint that Plaintiff has billed attorney or paralegal time for administrative or clerical tasks. The allocation of assigned work to the legal and support staff in Plaintiff's counsel's law firm is entirely reasonable for a firm consisting of seven attorneys, with only two attorneys practicing in the areas of employment law and civil rights, and if anything, reflects efficiency and necessity, as opposed to objectionable management practices.

2. Reduction for Unsuccessful Claims

Defendant opposes the amount of fees requested on the grounds that Plaintiff is not entitled to recover fees for time spent on "unsuccessful" claims, including her first trial, and pretrial time spent on her disparate treatment gender discrimination and retaliation claims. Defendant relies on its formulaic, mathematical calculations of time spent by Plaintiff's counsel and support staff throughout this case to reduce Plaintiff's reasonable fees to $187,891.92, a reduction of $497,614.33

(Def. Br., Dkt 317, Tables 1-3). The Court finds such a reduction of fees unwarranted under the circumstances of this case.

As Plaintiff points out, such *per se* reductions are not required. The Sixth Circuit Court of Appeals has "repeatedly rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed." *Deja Vu v. Metro. Gov't of Nashville & Davidson County, Tenn.,* 421 F.3d 417, 423 (6th Cir. 2005).

> "[A] court should not reduce attorney fees based on a simple ratio of successful claims to claims raised. When claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced."

*Id.* (quoting *Thurman v. Yellow Freight Sys., Inc.,* 90 F.3d 1160, 1169 (6th Cir.1996) (citation omitted)).

"[S]uccessful and unsuccessful claims are deemed related when they 'involve a common core of facts,' are 'based on related legal theories' or when counsel's time is 'devoted generally to the litigation as a whole, making it difficult to divide the hours expended.'" *Barnes v. City of Cincinnati,* 401 F.3d 729, 745 (6th Cir. 2005) (quoting *Hensley*, 461 U.S. at 433 [sic, 435]). The Court fully agrees with Plaintiff that this action should not be viewed as a series of discrete claims. Plaintiff states that her counsel took 25 depositions in this case and engaged in extensive written discovery. Further, the evidence gathered in this process related to all three claims of sexual harassment/hostile work environment, discrimination, and retaliation.

Although Plaintiff did not prevail on her discrimination and retaliation claims, the Court *cannot emphasize enough* that Plaintiff's successful sexual harassment/hostile work environment claim shared a common core of facts with all the asserted claims from the beginning to the

conclusion of this case. The discrimination, hostile work environment, and retaliation claims presented in this case were closely intertwined; they involved essentially the same underlying facts and evidence; and all pertained to Plaintiff's ultimate claim concerning a hostile work environment, which was the basis for the damages awarded. Accordingly, the Court finds a reduction in fees unwarranted.

As this Court has previously and repeatedly observed, this case involved voluminous testimony and evidence. Plaintiff succeeded on her ultimate, all-encompassing claim of a hostile work environment. Plaintiff obtained excellent results, and her counsel should recover a fully compensatory fee. This case and the time expended by counsel and support staff fall well within the rules of *Hensley*, 461 U.S. at 435, for appropriately compensating plaintiffs for the results achieved:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

(Citation and footnote omitted).

The Court acknowledges that this case has generated considerable attorney fees in reaching a resolution, but the Court does not find the fees excessive in light of the nature and unusual factual complexity of this discrimination case, and Defendant's unrelenting litigation of its position. The second jury determined that Defendant's policies, practices and customs regarding female employees in Plaintiff's work place were outrageous, as evidenced by the verdict. The jury verdict of $7.5 million in punitive damages is reflective of the jury's role in carrying out congressional

intent to discourage unlawful employment discrimination where the plaintiff and defendants most often stand in starkly disparate positions. These circumstances further support Plaintiff's attorney fee request because such an award serves a greater purpose than mere compensation. The legislation was intended to affect employers' behavior, not simply allow employees a remedy for unlawful discrimination.

This case was a perfect example of such disparity: Defendant is one of the largest public utilities in Michigan with more than 7,000 employees and enormous financial resources—Plaintiff is a single mother employed at $23 an hour, whose only access to redress was via a contingency fee contract with counsel in which she would remain liable for costs in the event she did not prevail. The resources of Defendant were displayed in full in its relentless, uncompromising defense of every minute aspect of this case, as was observed by this Court in numerous in-chambers conferences and various in-court hearings.[1] The defense far exceeded vigorous advocacy and can only be described as obstreperous. In sharp contrast, Plaintiff's counsel was at all times courteous and accommodating.

Moreover, in keeping with its defense to the litigation of Plaintiff's claims, Defendant disputes every aspect of Plaintiff's motion for attorney fees and costs. The defense has been one of constant obstruction and no concessions. Vigorous advocacy does not require ad hominem contentious defense barriers to the effective progress of litigation.

---

[1] It is particularly noteworthy that only as a result of defense counsel's *prolonged and unyielding demands* for its version of jury instructions, did Plaintiff's lead counsel collegially agree to resolve the impasse by withdrawing Plaintiff's state law claims, which the defense now attempts to use as a pro rata sword to defeat the total compensation rightfully due Plaintiff's counsel.

The bottom line is that the fees requested are reflective of Plaintiff's counsel's legitimate efforts to competently and forthrightly present Plaintiff's claims before this Court and a jury of her peers for appropriate redress, serving not only the interests of Plaintiff but also the greater public good. Lead counsel Stephen Drew's conduct of this case adhered to the time-honored civility exemplified in this community's legal culture, and that the Western District of Michigan demands. It is clear to the Court that lead counsel's civility carried through to associate counsel and support staff. That civility is foremost in such hotly contested and vigorously defended litigation is especially important as an aid to the Court in conserving scarce Court time and resources. This Court's strong view is that Plaintiff's counsel should not be punished, in the form of diminished compensation, for adhering to the Grand Rapids community's standards for cooperative and collegial legal advocacy.

## B. Costs[2]

Plaintiff requests costs of $38,879.05, as itemized in detail (Dkt 260-2). Defendant contends that Plaintiff should be entitled to a total award of no more than $8,768.98 in costs (Dkt 317 at 15).

The court has discretion to award to the prevailing party those out-of-pocket expenses that would normally be charged to a fee-paying client, including paralegal fees, as long as these are billed to the client in the ordinary course of business. *See* 42 U.S.C. § 1988; *Missouri v. Jenkins,* 491 U.S. 274, 288 (1989); *Cleveland Area Bd. of Realtors v. City of Euclid,* 965 F. Supp. 1017, 1023 (N.D. Ohio 1997) (citing *Northcross v. Bd. of Educ.,* 611 F.2d 624, 639 (6th Cir. 1979) (overruled on other grounds). Defendant objects to the costs on the grounds that Plaintiff provides no detail

---

[2]The parties do not distinguish between "costs" and "expenses" for purposes of analysis, nor has the Court. *See Northcross v. Bd. of Educ.,* 611 F.2d 624, 639 (6th Cir. 1979) (overruled on other grounds).

or documentation, making it impossible to determine if the costs were reasonable and necessary. The Court disagrees. The defense, as well as this Court, is fully aware of the nature of the majority of the costs claimed and their commensurate reasonableness in light of the litigation requisites of this case. Defendant's blanket objection is unfounded and unhelpful to the Court in resolving the issue of costs.

Defendant otherwise objects that several items are not recoverable and some other items should not be recovered given the nature of this case. As to the latter, the Court disagrees. Contrary to Defendant's disingenuous contentions, this case was vigorously defended putting almost every allegation to the test before the Court and in trial, well warranting Plaintiff's claimed costs for reviewing and preparing this case for the jury. Defendant's assertions that certain miscellaneous minor costs are objectionable and *per se* disallowed are not borne out by the authority cited. To the extent the award of these costs is within this Court's discretion, the Court, in the exercise of its discretion, finds the costs justified and reasonable. Finally, for the reasons stated above with regard to attorneys' fees, the Court rejects Defendant's argument that a two-thirds pro rata reduction should be applied to the allowed costs on the basis that Plaintiff did not prevail on two of her three theories of recovery. Plaintiff's theories involved the same core facts and were closely related. Plaintiff is awarded costs of $38,879.05.

IV. Conclusion

As aptly stated by another court in this district; "This is a classic case of the obdurate defendant who digs in its heels while litigating the merits of an action, loses, and then cries 'foul' when asked to pay the resulting attorneys' fees and costs." *Communities for Equity v. Michigan*

*High School Athletic Ass'n,* No. 1:98-CV-479, 2008 WL 906031, at *1 (W.D. Mich. March 31, 2008) (unpublished opinion).

Plaintiff's motion for attorneys' fees and costs is granted in part and denied in part. Plaintiff is awarded fees of $684,506.25. Plaintiff is awarded costs of $38,879.05.

An Order consistent with this Opinion will be entered.


DATED: March 30, 2012                    /s/ Janet T. Neff
                                         JANET T. NEFF
                                         United States District Judge